May it please the Court, Mark Krasdowski from the Office of the Federal Public Defender on behalf of Petitioner and Appellant Lyle Wright. Wright's jury was instructed that to constitute willful, deliberate, and premeditated attempt to commit murder, the would-be slayer must weigh and consider the question of killing and the reasons for and against such a choice, and having in mind the consequences, decides to kill. But Wright's jury never learned that at the time of the crimes, Wright was schizophrenic and mentally retarded and had taken PCP and marijuana earlier that day. Wright's jury never learned that because of his mental impairments at the time of the crimes, he had poor planning, he had poor contact with reality, his judgment was impaired, that even in the best of situations, he processed information very slowly, and that that was even more apparent in a stressful situation such as that presented here. But counsel, what do we do with the fact that the evidence suggests a fair amount of organized thinking and planning on his part, particularly with regard to arming himself with weapons than when the first gun misfired several times, going back to the car and getting a second weapon? The jury heard all that evidence, did it not, in trying to determine whether or not he had the requisite intent? The jury did hear such evidence, Your Honor. But to interpret that, the pivotal issue in this case is the magistrate judge correctly held was the state of mind of Wright at the time of his behavior, and then draw conclusions about what his state of mind must have been. Well, what is the jury argument that you make here, that he was so muddled and confused and unable to form the intent when he looked out of the, whatever it was, got out of the car or whatever he did and pointed the gun and shot him? That he's reacting impulsively to a situation he doesn't understand, as the Supreme Court emphasized in Atkins, the mentally retarded, by definition, are not as culpable because they do not act as willfully and deliberately. I think the argument that defense counsel would have been able to offer, and it's very, this is a very powerful mental health case where we have records existing for years before the trial of his retardation and schizophrenia, that to provide another picture of what was going on in his mind, because we have to look at the context of the trial. And here, the prosecution filled in the blank of what's going on in his mind by presenting this gang evidence, gang expert testimony, saying, oh, this is a gang retaliation. And the DA argued strongly to admit that testimony precisely to improve the motive and intent he was required to prove for attempted first-degree murder. So the jury heard the prosecution's view about how to view ambiguous behavior and what it means, and he could never have thought. I'm still troubled, and I'm trying to weigh the potential prejudice here, assuming that you're correct, that it was error under the first prong of Strickland not to bring out this evidence. I'm still troubled by the going back to the car and getting the second gun when the first one didn't prove to be effective enough to finish the deed. He goes back to the car to get a second gun, but he doesn't come back and rejoin the fray with the second gun. Well, he covers the crowd so that his compatriots can safely retreat and jump back into the car and make good their escape. The problem I'm having is that the evidence is pretty strong that he did more than just walk up to somebody, put a gun, point a gun at them and pull the trigger. He did much more than that. These cases are always hard because you're trying to put yourself in the mind of a jury. Had the jury known about this guy's mental background, would they have nonetheless concluded in the face of his deliberate conduct that he didn't have the intent to commit the assault? I think it's a tough argument to make, given what the evidence showed that he did, that I don't think you can contravene in terms of the fact that it occurred in that fashion. But the jury has to, looking at this conduct as described primarily from the victims, has to determine what the mental state was. I think it presents a completely different picture and a different interpretation to say, hey, wait a minute. He's retarded. He's schizophrenic. He's intoxicated. The expert in habeas testified about how he's acting impulsively and rashly. Under the jury instructions in this case, that means he's not guilty of attempted first-degree murder. This is a jury question. I really think the prejudice here is this is uniquely a function of the jury to determine this fact. In this case, we have a totally one-sided presentation because the DA submits this gang evidence because he's concerned, oh, my God, if the jury thinks that this is a normal person, they'll never think he had the intent. Well, it's a lot worse than that. He's not a so-called normal person. He's retarded and schizophrenic. I don't mean to say that to be pejorative, but the jury was deprived of this crucial information in a case where intent was the pivotal issue. The jury was also deprived of expert testimony that was presented in habeas where the expert explained that she had, based on her review of these records in existence before time of trial, real doubts about his willfulness and that he would have had difficulty premeditating and deliberating. Would that have been admissible under California law? We run into this problem. How far can a psychiatrist go in invading the province of the jury and answering the ultimate question as to whether he formed the intent? Does California permit the expert to go that far? Well, I think you're right, Your Honor, that the expert cannot answer the ultimate question for the jury. They can describe the behavior and talk about the difficulty the defendant might have. What happened here at the evidentiary hearing is I think the expert, Dr. Mungia, was very careful about not giving the ultimate answer, but the Attorney General, in sort of impeaching her with her deposition testimony, said, well, your deposition, you gave the ultimate answer that you didn't think he could form the intent. She said, that's right, but I don't want to say that in court because I think that does invade the province of the fact finder. And I think that is California law. So would the trier of fact at the habeas hearing then be allowed to disregard that answer for that reason, that it's not legally admissible under the rules of evidence? I think that's right because it couldn't have happened at state court. I think the magistrate judge here accepted all of Dr. Mungia's testimony and didn't unreasonably, I don't think he relied on the ultimate answer. I think he relied on all the evidence leading up to that. You know, I would just like to add, when the district attorney argued for the admission of the gang expert testimony, he argued that this was necessary so that the jury does not mistakenly conclude that Wright was merely swept up in events that unfolded before him. And that's exactly what happened here, and that's what the jury would have come to a conclusion on had it heard this powerful mental state evidence. The prejudice is also shown here from the district attorney's closing argument where he repeatedly urged the jury to not make the mistake of sort of imputing what they think a normal person would be doing in this situation, but to view this person through the lens of gang membership and gang worries and retaliation. And he repeatedly urged the jury to do this. And so again, we have the failure of defense counsel to present a powerful alternative explanation of what was going through the defendant's mind. I would like to, unless there are further questions, reserve the rest of my time for rebuttal. May, thank you. Good morning. May it please the Court, Deputy Attorney General Deborah Chuang, on behalf of Respondent Robert Ayers, Warden. The issue in this case is whether it was objectively unreasonable for the State Court to reject Petitioner's claim that trial counsel was ineffective in failing to investigate and present a mental state defense. Here the District Court correctly determined that Petitioner could not demonstrate prejudice. There was substantial, incredible evidence that strongly contradicted any claim that Petitioner reacted impulsively. Now, Petitioner's argument is essentially just because the jury didn't get to consider this mental state defense, that equals prejudice. That is not the case. And as the District Court had set forth in a lot of detail, there was a lot of evidence, very strong evidence, indicating that Petitioner did have the requisite state of mind. Also in this case, the State Trial Court found the precipient victim testimony to be incredibly believable. And in fact, that's also reflected in the time that the jury deliberated. The jury deliberated on the first day of deliberations for seven minutes. And then the next day, as indicated in the excerpts of record, page 214, they deliberated from 9.30 until 1.45 when they reached a verdict. Now, there's no indication whether they took any breaks or lunch that day. But even if they didn't take a lunch or any breaks, that is, they deliberated for a little bit longer, over four hours, which is a really short time for about a week-long jury trial. And Charles was going to say that the jury deliberated for a little bit longer than that. Well, don't you think that a careful defense attorney who had investigated and looked into this defendant's mental condition might have gotten the jury to deliberate a little longer if he had or she had put the evidence in about his mental state of mind? Mental condition. The trial, the district judge was quite convinced that her conduct as a defense attorney was substandard in not conducting any kind of an investigation. And looking at the hearing in the district court where the lawyer actually testified and so forth, one would have to agree with the district judge that this was not a sterling performance by the defense. Now, where I have the problem is how the judge decided that that wasn't prejudicial, because the juries usually are interested in hearing all about the defendant, all they can find out about him. And I did find out that he was a gang member. Now, a careful lawyer might think that, well, I don't want to get his mental condition into this case because this would be a strategic decision by the lawyer. I don't want the jury to just say, well, he obviously has to be institutionalized, so what difference does it make which slammer he goes to, the one for the mentally ill or the one for the criminally ill? And that might be a strategic decision, but we don't know because the lawyer didn't make any effort in that direction. Well, Your Honor, certainly the jury probably would have deliberated a little bit more with more evidence being presented. But what we have here is the district court actually held an evidentiary hearing. We know what Petitioner would have set forth as a defense. We don't have to guess. And the district court heard that evidentiary hearing testimony and thoroughly reviewed also the State record and determined that that mental State defense and expert testimony wasn't sufficient to carry it all the way. Well, what the district court said, if I understand it, is that the argument would have to be that his mental State, his mental condition caused him to act impulsively without forming any intent. And that that was, if I understand it, totally inconsistent with what actually happened here, with what the witnesses said happened, which was that he shot repeatedly. And when the, I guess the victim put his finger up to stop the bullet, and then he went back and got another gun, and that this all just didn't, no jury could question the inability to understand what he was doing and just swept away by the events. That's correct, Your Honor. The district court, the magistrate judge found, and as the district court then adopted later, that there was just strong evidence that contradicted any claim that Petitioner acted. Did the magistrate judge who conducted an evidentiary hearing heard the testimony of the defendant? Yes, Your Honor. And who else testified? Also the trial counsel, Dr. Mongio, who was Petitioner's expert witness, and Dr. Dunn, who was the expert for Respondent. And I would like also to point out that at the, I'd like to address in the reply brief at page 12, Petitioner says that the district court accepted Dr. Mongio's conclusions that at the time of the crimes, Petitioner was mentally retarded, suffered from schizophrenia, et cetera. We would disagree with that characterization. The magistrate judge found Dr. Mongio's conclusions, those conclusions were admissible. That's far different from accepting those conclusions. And the reason why is because Respondent had argued that Dr. Mongio's methodology rendered her testimony inadmissible under Dawbert. And so the district court addressed that claim and said that, no, they're admissible. But the district court didn't find one way or another whether or not her conclusions were credible or not credible. What the district court did find was that there was strong evidence indicating that he acted with intent to kill. One thing I'm a little, didn't quite understand was he was taking some medication for his mental condition, as I understand it, including Thorazine? That was when he was in school, as Petitioner even characterized it to his attorney at long time ago. So he didn't, he said he, it's something that he didn't take at the day of the shooting, so I thought that he was still, I got the impression he was still taking some medication. You're not? I'm not certain about that, Your Honor. I apologize. I'd like to also address that, point out that the Supreme Court said in Strickland v. Washington that it recognized that it will on the prejudice prong and recommended that that court should be followed. Petitioner complains that Respondent does not even try to distinguish the cases Petitioner cited in support of his argument that he was prejudiced by counsel's failure to investigate and present a mental state defense. But what Respondent did in this case was adhere to Strickland's recognition that prejudice is a case-by-case analysis. And in Strickland, the Supreme Court said attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. They cannot be classified according to likelihood of causing prejudice. Rather, the defendant must show that he had actually had an adverse effect on the defense. And in this case, Petitioner did not meet that burden. And we also have the additional layer of Section 2254d that said in order for him to get habeas relief, he must be objectively he must show that the State court object was objectively unreasonable in applying clearly established Federal laws determined by the Supreme Court. Here the State court adjudication was not objectively unreasonable. The adjudication is entitled to deference under Section 2254d. And substantial credible evidence strongly contradicted any claim that he reacted impulsively. Unless there are any questions, I am prepared to submit. There don't appear to be any. Thank you, counsel. Briefly, Your Honors. Excerpts of record, page 411, is part of the transcript of the evidentiary hearing below. And Mr. Wright testified at that page that he was on medication for his mental problems at the day of the crime. He said, I think it was Thorazine, were you living with your mother during the time of the incident? Yes. Were you taking medicine at that point? Yes. Had you taken your medicine the day of the incident? No. Counsel, could you address the issue that opposing counsel raised with regard to the methodology of your defense expert? As I understand it, there was an attack by the respondent's expert on the validity of the testing methods that she employed to reach her conclusion. Did the court ever resolve, other than saying, well, I would have let it in under Daubert, what weight ought to be given to that opinion? You know, I don't think the court expressly said it the way Your Honor just did. But I think a reasonable reading of the opinion is that the magistrate judge did accept the conclusions and just made the legal determination that evidence of retardation and schizophrenia at all would not have amounted to prejudice in this case. So my view of the record is that all the fact finding by the magistrate judge supports Petitioner's position and the magistrate judge just came to a conclusion that we believe is wrong. But the magistrate judge doesn't make any witnesses. He, the report does not say that he finds one credible over the other, but he accepts Dr. Mungio's conclusions and assesses the whole case in light of those conclusions. He never says she's not credible. And he expressly rejected the six or so different attacks on her methodology. Is Thorazine used to treat schizophrenia? I believe it is, Your Honor. Is the thrust of the argument here with respect to his mental condition, the retardation, or is it the schizophrenia? Because he didn't exhibit any obvious signs of schizophrenia, voices, or split personality or anything like that. Well, there was, I'm sorry. Yeah, go ahead. There was no testimony on that at trial, but, you know, the problem with schizophrenia is that that can all be going on internally and Yeah, I understand. But his lawyer did testify that she couldn't see any signs, didn't see any signs of any influence of a mental condition on his behavior, and that's why she didn't I understand it's a lay testimony, et cetera, but that's why she didn't go into it further. She did say that. That's correct.  Thank you, Your Honor. The case just argued is submitted for decision. We'll hear the next case, which is United States v. Marshall.
judges: Goodwin, Schroeder, Tallman